# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION
## (COOKEVILLE)

| | |
|---|---|
| SHERIE RITZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FENTRESS COUNTY, TENNESSEE; )<br>)<br>HUNTER FOWLER, individually and in his )<br>official capacity as Sheriff of Fentress County, )<br>Tennessee; )<br>)<br>MICHAEL REAGON, individually and in his )<br>official capacity as former Sheriff of Fentress )<br>County, Tennessee; )<br>)<br>ANTHONY LEANZA, individually; )<br>)<br>JUSTIN ATCHLEY, individually; )<br>)<br>JOHN DOE (Daytime Deputy), individually; )<br>)<br>JUSTIN CUNNINGHAM, )<br>individually; )<br>)<br>RANDR, LLC; and )<br>)<br>RONALD TAYLOR, individually, )<br>)<br>Defendants. ) | Case No. |

---

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) AND RELATED STATE CLAIMS

---

## **INTRODUCTION**

1.      Plaintiff Sherie Ritz brings this action against the above-named Defendants and their employees, agents, and successors in office pursuant to 42 U.S.C. § 1983 to redress violations of her rights under the Fourth and Fourteenth Amendments to the United States Constitution, including unlawful entry into her home, unlawful seizure of her person, and deprivation of property without due process of law. Plaintiff further asserts related claims under Article I, §§ 7 and 8 of the Tennessee Constitution, the Tennessee Consumer Protection Act, and Tennessee common law, including claims of conversion, trespass, and trespass to chattels, all arising from the same conduct and operative facts.

2.      Defendant Justin Cunningham, a Fentress County Sheriff's Deputy, entered Ms. Ritz's home in the wee hours of the morning on August 16, 2025, and removed her from her home. While Defendant Deputy Cunningham was purporting to enforce a court order in an eviction case, Tennessee law requires a landlord to seek and receive a writ of possession from the court before law enforcement may remove an occupant from a residence. No writ was issued, yet Defendant Deputy Cunningham entered Ms. Ritz's home shortly after midnight, without a warrant, writ of possession, consent, or exigent circumstances, woke her from sleep, and forced her from the home under threat of arrest, thereby effectuating a warrantless seizure of her person and home. Ms. Ritz was never allowed back into her home.

3.      As a result of Defendants' actions, Ms. Ritz was forced from her home without constitutionally required process and deprived of both her possessory interest in her residence and nearly all of her personal property. Ms. Ritz seeks redress for these constitutional violations and related state-law claims pursuant to 42 U.S.C. § 1983 and Tennessee law.

2

**JURISDICTION AND VENUE**

4.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

5.      Ms. Ritz alleges that Defendants subjected her to an unreasonable seizure of her home and personal property and deprived her of protected property interests without constitutionally required process.

6.      Ms. Ritz asserts related claims under Tennessee law.

7.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

8.      This Court has supplemental jurisdiction over Ms. Ritz's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims derive from a common nucleus of operative fact and are such that one would ordinarily expect them to be tried in one judicial proceeding.

9.      Venue is proper in the Northeastern Division of the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)(1) and (2) because one or more Defendants reside in this District and all are residents of Tennessee and because a substantial part of the events giving rise to Ms. Ritz's claims occurred within this Division.

**PARTIES**

10.     Plaintiff Sherie Ritz is a resident of Cumberland County, Tennessee.

11.     From August 2023 until August 2025, Ms. Ritz resided at 7036 South York Highway, Clarkrange, Tennessee, in Fentress County (the "Premises").

12.     Defendant Fentress County, Tennessee is a political subdivision of the State of Tennessee responsible for the policies, practices, and operation of the Fentress County Sheriff's Office.

3

13. At all times relevant, Defendant Michael Reagon was the elected Sheriff of Fentress County, Tennessee. He is sued in both his individual and official capacities. Defendant Reagon resigned as Sheriff of Fentress County on or about December 19, 2025.

14. Until approximately March 23, 2026, Defendant Hunter Fowler was employed by Fentress County, Tennessee in the Sheriff's Department. As of approximately March 23, 2026, Defendant Hunter Fowler became Sheriff of Fentress County. He is sued in both his individual and official capacities.

15. At all times relevant, Defendant Anthony Leanza was a deputy sheriff employed by Fentress County, Tennessee. He is sued in his individual capacity.

16. At all times relevant, Defendant Justin Atchley was a deputy sheriff employed by Fentress County, Tennessee. He is sued in his individual capacity.

17. At all times relevant, Defendant Justin Cunningham was a deputy sheriff employed by Fentress County, Tennessee. He is sued in his individual capacity.

18. Defendant John Doe (Daytime Deputy) is an unidentified deputy sheriff employed by Fentress County, Tennessee. He was present at the Premises on August 15, 2025, and is sued in his individual capacity.

19. Collectively, Defendants Fowler, Leanza, Atchley, Cunningham, and John Doe are referred to as the Law Enforcement Deputies.

20. Defendant RandR, LLC is a Tennessee limited liability company that owned the Premises located at 7036 South York Highway, Clarkrange, Tennessee.

21. Defendant Ronald Taylor is an individual resident of Tennessee and, upon information and belief, the sole member of RandR, LLC.

4

22.     At all times relevant, the Law Enforcement Deputies acted under color of state law and purported to exercise official authority as deputies of the Fentress County Sheriff's Office.

## FACTUAL ALLEGATIONS

### I.     Tenancy and Lawful Possessory Interest

23.     In approximately August 2023, Ms. Ritz moved into a mobile home located within a mobile home park at the Premises.

24.     Ms. Ritz and Defendants Ronald Taylor and RandR, LLC. had a month-to-month verbal rental agreement until October 1, 2024.

25.     On October 1, 2024, Ms. Ritz entered into a written lease agreement for the Premises with Defendant RandR, LLC.

26.     On January 28, 2025, Ms. Ritz executed a subsequent written lease continuing her tenancy with Defendant Taylor.

27.     At all times relevant, Ms. Ritz resided at the Premises as her primary residence and maintained lawful possession and a reasonable expectation of privacy within the home.

### II.     State Court Proceedings

28.     On April 2, 2025, Dustin Smith filed a Detainer Summons against Ms. Ritz in the General Sessions Court for Fentress County, Tennessee. Upon information and belief, Dustin Smith was acting as a property manager for Defendants Ronald Taylor and RandR, LLC.

29.     On June 16, 2025, the Honorable Todd Burnett, Fentress County General Sessions Judge, dismissed the detainer action.

5

30. On June 26, 2025, RandR, LLC filed a Notice of Appeal to the Fentress County Circuit Court.

31. Plaintiff appeared pro se in Circuit Court on July 15, 2025.

32. Defendants Ronald Taylor and RandR, LLC appeared through counsel, Matthew McClanahan.

33. On July 15, 2025, the Honorable John McAfee, Circuit Court Judge, entered an order awarding possession of the Premises to RandR, LLC and directing Plaintiff to surrender possession within thirty (30) days, consistent with the statutory appeal period set forth in Tenn. R. App. P. 4(a).

34. Under Tennessee law, a judgment for possession alone does not authorize removal of an occupant. A landlord is not entitled to possession until the judgment is executed through lawful process, which requires issuance and execution of a writ of possession by the sheriff. See Tenn. Code Ann. §§ 29-18-126 to -130; *Cain v. Jackson*, 2005 WL 2376553, at *4 (Tenn. Ct. App. Sept. 27, 2005).

35. No writ of possession was issued by any court authorizing removal of Ms. Ritz from the Premises.

### III. Deputies' August 15, 2025 Visit

36. On information and belief, Defendant Ronald Taylor called the Fentress County Sheriff's Office on August 15, 2025, seeking to remove Ms. Ritz.

37. As of August 15, 2025, no writ of possession had been issued.

38. The following day, August 16, was the first day when a writ could have lawfully issued. Because the 16th was a Saturday, normal practice would have been for Defendant Taylor to contact the clerk's office when it opened the following Monday, August 18, and request issuance

6

of the writ, which would then have been provided to the sheriff's office for execution on or after the 18th.

39. On August 15, 2025, as captured on body camera footage, Defendant Deputy Anthony Leanza arrived at approximately 9:08 a.m. to the Premises and met with Defendant Ronald Taylor before speaking with Ms. Ritz.

40. Defendant Deputy Justin Atchley arrived later, accompanied by Defendant John Doe, the unidentified daytime deputy.

41. Defendant Ronald Taylor actively participated in the meeting, communicated directly with the three deputies Leanza, Atchley and John Doe regarding Ms. Ritz's removal, and remained present while deputies informed Ms. Ritz that she was required to vacate the Premises.

42. Per body camera footage, Defendant Deputy Leanza had ample opportunity to consult with supervisors regarding the process of removing Ms. Ritz. Defendant Deputy Leanza stated to Mr. Taylor that another deputy was contacting others to determine what to do in this situation.

43. This was not an emergency situation. There was no threat to persons or property, no report of criminal activity, and no exigent circumstances. The deputies had ample time to verify the legal requirements for eviction enforcement, including whether a writ of possession was required or had been issued. They failed to do so.

44. The deputies demonstrated a lack of knowledge or training regarding any policy governing the removal of a person from a property pursuant to a writ of possession or in a detainer action, demonstrating a failure of training, supervision, or policy within the Sheriff's Office.

45. Defendant Deputy Leanza showed Ms. Ritz the July 15, 2025, order from Fentress County Circuit Court and informed her that she should have already vacated the Premises.

46.     When Ms. Ritz asked what would occur if she did not leave, Deputy Leanza stated that she could be arrested and charged with criminal trespass, despite the absence of lawful authority to treat Ms. Ritz as a trespasser while she remained in lawful possession of the Premises.

47.     Per the body camera footage, no deputy presented or referenced a writ of possession authorizing eviction or removal.

48.     The deputies informed Ms. Ritz that they would return the following day.

49.     Because of the deputies' statements, Ms. Ritz believed that she would possibly be arrested should she remain in the property.

50.     The deputies communicated and coordinated directly with Defendant Ronald Taylor concerning Ms. Ritz's removal from the Premises, including during in-person interactions between Defendants Taylor and the Law Enforcement Deputies at the property on August 15, 2025.

51.     Defendants Leanza, Atchley, and John Doe (Daytime Deputy) asserted that Ms. Ritz was required to vacate the residence that day and threatened arrest for criminal trespass if she failed to leave, despite the absence of the issuance of a writ of possession. It was reasonably foreseeable that deputies acting under color of state authority would thereafter return to the residence to enforce Ms. Ritz's removal without lawful eviction process.

52.     Defendants Leanza, Atchley, and John Doe (Daytime Deputy) did not advise Ms. Ritz or Mr. Taylor that the lawful eviction process had not been completed, that no writ of possession had yet issued, and that a writ of possession was required before Ms. Ritz could be removed. Instead, they asserted that she was required to vacate and would face possible arrest if she remained, thereby invoking official authority to compel her removal and setting in motion the subsequent entry and unlawful removal.

## IV.  Warrantless Entry and Removal — August 16, 2025

53.  As captured on body camera footage, just after midnight on August 16, 2025, Defendant Deputy Justin Cunningham arrived at the premises.

54.  Upon information and belief, Defendant Taylor had coordinated with the Sheriff's Department and the Law Enforcement Deputies to remove Ms. Ritz from the home.

55.  Defendant Deputy Cunningham spoke with Defendant Taylor, and Defendant Taylor showed Defendant Deputy Cunningham the final order from Circuit Court.

56.  Defendant Deputy Cunningham noted most people do not evict at midnight and that the order talks about Ms. Ritz owing different amounts depending on when she left.

57.  Defendant Deputy Cunningham called "Hunter" and asked him about the process as he had never done an eviction before.

58.  Per the body camera footage, Defendant Deputy Cunningham's phone showed he had called "Dep Hunter Fowler."

59.  Defendant Deputy Cunningham explained the circumstances and the order and sent Defendant Deputy Fowler a photo of the order.

60.  Per the body camera footage, Defendant Deputy Cunningham stated, "Well, it's been 30 days and 27 minutes, and they're wanting me to go and get her out of the house."

61.  Ultimately, Defendant Deputy Fowler advised Defendant Deputy Cunningham that he could proceed with removing Ms. Ritz.

62.  At no time during this conversation is a writ of possession mentioned.

63.  Ms. Ritz was asleep inside her home at that time.

64.  Per the body camera footage, Defendant Deputy Cunningham knocked multiple times on the door and shouted, "Sheriff's Department!"

65. Defendant Deputy Cunningham watched as Defendant Taylor and his unidentified maintenance men used a tool to open the locked door.

66. Once the door was open, Defendant Deputy Cunningham entered Ms. Ritz's home without her consent, either express or implied, and without an issued writ of possession.

67. Defendant Deputy Cunningham crossed the threshold of the residence and entered the interior living space.

68. Per the body camera footage, he entered her bedroom and told her, "Sherrif's department. You're supposed to be out of this property, so get up and get out."

69. Ms. Ritz was asleep in her bed. As she had not gotten up out of bed yet, he told her, "Need you to get up, ma'am, get out of the property, that way you don't get charged with criminal trespassing, okay? Let's get up if you don't want to go to jail. I'm not turning my light off."

70. Ms. Ritz was allowed to change clothes and gather a handful of belongings before being set out.

71. Once Ms. Ritz eventually got to her vehicle, Defendant Deputy Cunningham approached her to tell her, "Well, listen to me, I just want to make sure you know this, that way you don't go to jail, okay? You are not allowed back on that property. If you go back on that property, you will go to jail, okay? I just want to make sure that you know that, okay?"

72. Defendant Deputy Cunningham went back to his patrol car and radioed in to note that Ms. Ritz had been evicted "and if she goes back she is now criminally trespassing from that property."

73. At all times relevant, no warrant authorized entry into the home. No writ of possession had been issued. No judicial officer authorized any law enforcement officer to enter Ms. Ritz's residence or to remove her from the Premises.

74. Defendant Deputy Cunningham, after conversing with Defendant Deputy Fowler, nevertheless entered the home and ordered Ms. Ritz to leave without any judicial authorization or lawful civil process. He also told her she would be arrested for criminally trespassing if she returned.

75. This was a foreseeable action because the daytime deputies (Defendants Leanza, Atchley, and John Doe) had previously asserted that if Ms. Ritz did not leave, law enforcement would return to remove her.

76. Ms. Ritz was not suspected of committing any criminal offense.

77. No exigent circumstances existed requiring immediate entry into the residence.

78. Under threat of arrest and assertion of official authority, Ms. Ritz complied with Defendant Deputy Cunningham's instructions.

79. Ms. Ritz was permitted to gather only limited personal belongings before being required to leave.

80. Defendant Deputy Cunningham denied Ms. Ritz's request to retrieve additional possessions.

81. Defendant Ronald Taylor was present outside the residence as Ms. Ritz exited under the direction of Defendant Deputy Cunningham. In addition, Mr. Taylor had multiple additional men with him right outside her door.

82. Ms. Ritz was removed from her home without the issuance of a writ of possession. Ms. Ritz had no alternative housing available and was rendered homeless. She was forced to sleep in her truck the night of August 16, 2025, after being removed from her home in the middle of the night.

83. Ms. Ritz's unlawful removal and subsequent homelessness caused her substantial harm. Ms. Ritz was left without a home and without most of her personal belongings, including irreplaceable personal items such as the military funeral flags of her late husband and father-in-law and the loss of her beloved cat. She was removed from her home in the middle of the night, awakened by a male Sheriff's deputy while she was sleeping and then when she left the home, Defendant Ronald Taylor and multiple men associated with him were outside as she made her way to her vehicle, making her feel extremely unsafe and subjecting her to fear, humiliation, and extreme emotional distress under coercive and unsafe conditions.

### V.      Deprivation of Personal Property

84. To the best of her knowledge, Ms. Ritz's personal belongings remained in the home through the weekend after her removal on August 16, 2025.

85. On Monday, August 18, 2025, Ms. Ritz contacted Legal Aid Society.

86. On August 18, 2025, Ms. Ritz's counsel sent written correspondence to Defendant Ronald Taylor's counsel, Matthew McClanahan, requesting access to her personal property, including her cat, as required under T.C.A. § 29-18-127.

87. On August 22, 2025, Ms. Ritz's counsel again contacted Mr. McClanahan regarding the location of her personal belongings. Mr. McClanahan responded asking what Ms. Ritz had remaining in the Premises. Ms. Ritz's counsel replied with a short list of her belongings as well as requesting if they see her cat, to let counsel know so counsel could retrieve the cat for Ms. Ritz.

88. Ms. Ritz was never permitted to retrieve the remainder of her personal property.

89. Upon information and belief, Defendant Ronald Taylor, either individually or through agents acting at his direction, disposed of Ms. Ritz's personal property.

12

90. Ms. Ritz lost the majority of her personal possessions following her removal from the Premises, including but not limited to her late husband's and father-in-law's memorial flags, her late husband's dress blues uniform, her wedding and engagement rings, jewelry, small kitchen appliances, furniture, electronics, clothing, and food.

91. At all relevant times, the Law Enforcement Defendants acted under color of state law.

92. Defendant Ronald Taylor acted jointly and in concert with the Law Enforcement Deputies in effectuating Ms. Ritz's removal from the Premises, including by being present during the August 15, 2025, encounter, participating in communications with deputies regarding her removal, and remaining present during the subsequent nighttime removal carried out by Defendant Deputy Cunningham.

93. The Law Enforcement Deputies' conduct constituted state action within the meaning of 42 U.S.C. § 1983.

### VI. Policies, Training, and Supervision Concerning Evictions

94. Deputies in Fentress County regularly respond to landlord-tenant disputes and eviction-related matters, making the need for constitutionally adequate training on the distinction between a judgment for possession and a writ of possession plainly obvious.

95. At all relevant times, Defendants Fentress County and Sheriff Michael Reagon were deliberately indifferent to the known or obvious risk that deputies would unlawfully remove tenants without judicial process, a recurring situation in which deputies were expected to act.

96. Defendants Fentress County and Michael Reagon consciously disregarded the fact that deputies were not adequately trained in the legal requirements governing detainer actions and the constitutional limitations on removing occupants from their homes.

13

97. Defendants Fentress County and Michael Reagon had actual or constructive knowledge that under Tennessee law, the Sheriff's Office may not lawfully remove a tenant from possession absent a duly issued writ of possession following a detainer judgment.

98. The legal requirement of a writ of possession is straightforward, well established under Tennessee law, and central to the Sheriff's statutory role to execute such writs, making the need for training neither novel nor complex.

99. Defendants Fentress County and Michael Reagon, consciously disregarded that constitutionally adequate policies and training must emphasize that deputies are prohibited from entering a residence and removing occupants at the request of a landlord, property owner, or third party without a valid writ of possession.

100. Defendants Fentress County and Michael Reagon, along with any other supervisory officials, were required to emphasize the statutory requirement of a writ of possession before Sheriff involvement in a detainer action where the owner of the property is requesting assistance from the Sheriff's Office in removing a tenant.

101. Despite the routine and statutorily required involvement of sheriff's deputies in eviction cases, Defendants Fentress County and Sheriff Reagon failed to implement adequate policies, training, or supervisory safeguards ensuring that deputies do not enter residences or remove occupants absent a lawfully issued writ of possession.

102. Defendants Fentress County and Sheriff Fowler continue to fail to implement adequate policies, training, or supervisory safeguards ensuring that deputies do not enter residences or remove occupants absent a lawfully issued writ of possession.

103. This failure reflects deliberate indifference, as the Defendants Fentress County and Sheriff Reagon disregarded the known or obvious consequence that deputies would violate constitutional rights in the absence of proper training and policy guidance.

104. Upon information and belief, Defendants Fentress County and Sheriff Fowler continue to consciously disregard providing constitutionally adequate policies and training to the deputies regarding the requirement of a writ of possession under Tennessee law.

## CONSTITUTIONAL AND LEGAL FRAMEWORK

105. The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures within their homes.

106. "Physical entry into the home is the chief evil against which the Fourth Amendment is directed," and warrantless entry by law enforcement officers is presumptively unreasonable absent consent, exigent circumstances, or lawful judicial authorization. *See United States v. U.S. District Court for Eastern District of Michigan*, 407 U.S. 297, 313 (1972).

107. Removal of an occupant from her residence by law enforcement constitutes a seizure within the meaning of the Fourth Amendment. *See Soldal v. Cook County*, 506 U.S. 56, 61–72 (1992) ("a 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests").

108. The Fourteenth Amendment prohibits state actors from depriving any person of property without due process of law.

109. A tenant possesses constitutionally protected property interests in continued occupancy of her residence and in personal property located within the home. See *Greene v. Lindsey*, 456 U.S. 444, 450–51 (1982); *Soldal v. Cook County*, 506 U.S. at 61–62.

15

110. Under Tennessee law, execution of a writ of possession by the sheriff is the lawful mechanism by which an occupant may be removed following entry of a judgment for possession. See Tenn. Code Ann. §§ 29-18-126, 29-18-130.

111. Issuance of a writ of possession provides notice and procedural safeguards prior to physical eviction and removal of personal property.

112. Absent issuance of a writ of possession or other lawful authority, law enforcement officers lack authority to enter a residence or remove an occupant based solely upon a judgment for possession. See *Soldal v. Cook County*, 506 U.S. at 61–72; Tenn. Code Ann. §§ 29-18-126, 29-18-130.

## CAUSES OF ACTION

### COUNT I

**Unreasonable Search and Seizure in Violation of the Fourth Amendment**
**42 U.S.C. § 1983**
(Against Defendants Fentress County, Defendant Michael Reagon and the Law Enforcement Deputies)

113. Ms. Ritz incorporates by reference the preceding paragraphs as though fully set forth herein.

114. Sheriff Reagon and the Law Enforcement Deputies who participated in or caused the entry were acting under color of state law for Fentress County, Tennessee.

115. Prior to the nighttime entry, Defendants Leanza, Atchley, and John Doe (Daytime Deputy) informed Ms. Ritz that she was required to vacate the residence and that she would be subject to arrest for criminal trespass if she remained. They further advised that law enforcement would return if she did not leave. These statements, made under color of official authority, asserted that Ms. Ritz no longer had a lawful right to remain in her home and established the

16

basis for enforcement of her removal. The subsequent nighttime entry and removal of Ms. Ritz by Defendant Deputy Cunningham were a direct and foreseeable continuation of the authority asserted, and actions initiated by Defendants Leanza, Atchley, and John Doe (Daytime Deputy).

116. The Fourth Amendment protects individuals against unreasonable searches and seizures within their homes.

117. A person's home receives the highest level of protection under the Fourth Amendment.

118. During the early morning hours of August 16, 2025, Defendant Deputy Cunningham entered Ms. Ritz's residence by physically crossing the threshold of the home.

119. Ms. Ritz was asleep inside her home at the time of entry.

120. Ms. Ritz did not consent to the deputy's entry into the residence.

121. Ms. Ritz was not suspected of committing any criminal offense.

122. No exigent circumstances existed justifying entry into the residence.

123. Defendant Deputy Cunningham did not possess a search warrant authorizing entry into the home.

124. No writ of possession authorized entry into the residence or removal of Ms. Ritz.

125. Defendant Deputy Cunningham lacked lawful authority to enter Ms. Ritz's home or remove her absent issuance of a writ of possession. Defendants' actions constituted both an unlawful entry and an unlawful seizure under clearly established law.

126. Defendant Deputy Cunningham conferred with Defendant Deputy Fowler regarding the legality of entry into the residence and both erroneously concluded entry was legal.

127. Defendant Deputy Cunningham entered Ms. Ritz's bedroom while she was asleep and ordered her to leave immediately.

17

128. Defendant Deputy Cunningham informed Ms. Ritz that she would be subject to arrest for criminal trespass if she remained at or returned to the residence.

129. Under threat of arrest and assertion of official authority, Ms. Ritz complied with Defendant Deputy Cunningham's orders.

130. A reasonable person in Ms. Ritz's position would not have felt free to remain in her home.

131. Ms. Ritz was thereby seized within the meaning of the Fourth Amendment.

132. Defendant Deputy Cunningham's warrantless entry into Ms. Ritz's home and her removal without a writ of possession constituted an unreasonable search and seizure under the Fourth Amendment.

133. At the time of the events described herein, it was clearly established that law enforcement officers may not enter a home without a warrant, consent, or exigent circumstances.

134. It was further clearly established that law enforcement officers may not physically remove an occupant from her home absent lawful judicial process, including the issuance of a writ of possession.

135. The conduct of Defendant Deputy Cunningham in effectuating the entry, as well as the actions of Defendants Leanza, Atchley, John Doe (Daytime Deputy), and Fowler in causing and setting in motion the entry, violated Ms. Ritz's clearly established rights under the Fourth Amendment to the United States Constitution.

136. Defendant Fentress County and Defendant Michael Reagon are liable because the actions of the Law Enforcement Deputies were undertaken pursuant to policies, customs, practices, or failures in training or supervision permitting eviction or removal of occupants without lawful process.

137.   As a direct and proximate result of the actions of Defendants Fentress County, Reagon, Leanza, Atchley, John Doe (Daytime Deputy), Cunningham and Fowler, Ms. Ritz suffered homelessness, loss of personal property, emotional distress, and other damages.

**COUNT II**

**Fourteenth Amendment – Deprivation of Property Without Procedural Due Process**
**42 U.S.C. § 1983**
(Against Defendants Fentress County, Michael Reagon and the Law Enforcement Deputies)

138.   Ms. Ritz incorporates by reference the preceding paragraphs as though fully set forth herein.

139.   Ms. Ritz possessed constitutionally protected property interests in:

      a.   Continued occupancy of her home absent lawful eviction process; and

      b.   Her personal belongings located within the residence.

140.   Under Tennessee law, removal of a tenant following entry of a judgment for possession requires issuance and then execution of a writ of possession by the county sheriff.

141.   The issuance of a writ of possession provides notice and lawful process prior to physical eviction and removal of property.

142.   No writ of possession was issued authorizing Ms. Ritz's removal from the residence.

143.   No writ of possession was executed by the Law Enforcement Deputies.

144.   The Law Enforcement Deputies caused Ms. Ritz to be removed from her home without the issuance of a writ of possession or lawful eviction process.

145.   The removal of Ms. Ritz from her home was accomplished through the same unlawful exercise of authority that resulted in the warrantless nighttime entry described above.

146. Ms. Ritz's unlawful removal was accomplished through the use and misuse of official law-enforcement authority.

147. Ms. Ritz was not provided notice through a writ of possession prior to being dispossessed of her home.

148. Following Ms. Ritz's removal, she was denied access to retrieve personal property remaining inside the residence.

149. Ms. Ritz's personal belongings were lost, destroyed, or otherwise permanently withheld as a result of Defendants' actions.

150. The deprivation of Ms. Ritz's possessory and property interests resulted from Defendants' exercise of governmental authority to effectuate eviction without required legal process.

151. The deprivation of Ms. Ritz's property was not the result of a random and unauthorized act by a rogue employee. Rather, pre-deprivation process was required and readily available under Tennessee law, including the issuance and execution of a writ of possession. Defendants bypassed these established procedures and instead used law enforcement authority to effectuate Ms. Ritz's removal without lawful process, despite having the time and opportunity to comply with those requirements.

152. Defendants deprived Ms. Ritz of protected property interests without constitutionally adequate procedural due process in violation of the Fourteenth Amendment.

153. Defendant Fentress County and Michael Reagon are liable because the actions of the Law Enforcement Deputies were undertaken pursuant to policies, customs, practices, or failures in training or supervision permitting eviction or removal of occupants without lawful process.

154. As a direct and proximate result of the actions of Defendants Fentress County, Reagon, Leanza, Atchley, John Doe (Daytime Deputy), Cunningham, and Fowler, Ms. Ritz suffered homelessness, loss of personal property, emotional distress, and other damages.

155. The constitutional violations suffered by Ms. Ritz were a highly predictable consequence of Fentress County and Defendant Reagon's failure to ensure that sheriff's deputies understood that a judgment for possession alone does not authorize entry into a residence or removal of an occupant absent the issuance of a writ of possession. Deputies in Fentress County routinely respond to civil possession disputes and eviction-related matters, making the need for training and supervision regarding lawful eviction procedures obvious. As a result, unconstitutional entry into homes and removal of occupants without lawful process was a highly predictable consequence of the County's failure to train and supervise its deputies.

156. Defendants' conduct constituted a classic deprivation of property without due process where established procedures existed but were deliberately ignored.

### COUNT III

**Municipal Liability – Monell Claim**
**42 U.S.C. § 1983**
(Against Defendant Fentress County, Tennessee)

157. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

158. At all relevant times, the Law Enforcement Deputies who removed Ms. Ritz from her residence were employees and agents of Defendant Fentress County, acting within the scope of their employment and pursuant to authority delegated by the County through the Fentress County Sheriff's Office.

21

159. Under Tennessee law, removal of an occupant following entry of a judgment for possession may occur only through the issuance and execution of a writ of possession by the County Sheriff's Office.

160. The execution of writs of possession and the handling of eviction-related matters are routine and recurring duties of sheriff's deputies, requiring a clear understanding of when deputies are authorized to enter a residence and remove an occupant.

161. The constitutional limitations governing such conduct, including that deputies may not enter a home or remove an occupant absent a warrant, consent, exigent circumstances, or lawful judicial process, are fundamental, well established, and directly tied to core law enforcement duties.

162. Despite this obvious and recurring need, Defendant Fentress County, and Defendants Regan and Fowler, have failed and, upon information and belief, continue to fail to implement adequate policies, training, and supervision to ensure that deputies understand and comply with these requirements.

163. Defendant Fentress County, through its policymakers, knew or should have known that deputies would be called upon to assist landlords in removing occupants and would be required to determine whether lawful authority existed to do so.

164. Notwithstanding this known and obvious risk, Defendant Fentress County failed to provide constitutionally adequate training and guidance regarding:

   a) the distinction between a judgment for possession and a writ of possession;

   b) the requirement that a writ of possession must be issued and executed before removal; and

22

c) the prohibition on entering a residence or removing an occupant at a landlord's absent lawful judicial authorization.

165. The removal of Ms. Ritz from her home without a writ of possession occurred through deputies' exercise of official authority consistent with practices permitted or tolerated within the Fentress County Sheriff's Office.

166. The need for such training and policy guidance was so obvious, and the consequences of failing to provide it so highly predictable, that Defendant Fentress County's failure constitutes deliberate indifference to constitutional rights.

167. The deputies' conduct in this case, including directing Ms. Ritz to vacate, threatening arrest for criminal trespass, and entering her home at night without a writ of possession or a warrant reflects a lack of understanding of basic constitutional and statutory limitations consistent with the County's failure to train, supervise, and implement appropriate policies.

168. Upon information and belief, no adequate policy, written or otherwise, exists requiring deputies to confirm the existence of a writ of possession before removing occupants.

169. The unconstitutional entry into Ms. Ritz's home and her removal without a writ of possession were the direct and highly predictable consequences of Defendant Fentress County's failure in training, supervision, and policy.

170. Upon information and belief, policymakers were aware of and failed to correct the risk that deputies would improperly assist landlords in removing occupants without lawful process.

171. These lack of policies, customs, practices, and failures in training and supervision were the moving force behind the violation of Ms. Ritz's constitutional rights.

172. As a direct and proximate result, Ms. Ritz suffered constitutional injuries and damages.

23

173. Upon information and belief, there remains a real and immediate threat of similar constitutional violations affecting other residents of Fentress County.

## COUNT IV

### State Law Claim – Conversion
(Against Defendants Fentress County, Michael Reagon, Law Enforcement Deputies, RandR, LLC, and Ronald Taylor)

174. Ms. Ritz incorporates by reference the preceding paragraphs as though fully set forth herein.

175. At the time of her removal from the residence, Ms. Ritz owned personal property located within the Premises, including household goods, furnishings, clothing, personal effects, and other belongings.

176. Ms. Ritz had the immediate right to possess and control her personal property.

177. On August 16, 2025, Ms. Ritz was removed from the Premises through the involvement of the Law Enforcement Deputies acting at the request of Defendant Ronald Taylor and for the benefit of Defendant RandR, LLC.

178. Ms. Ritz was permitted to retrieve only a limited portion of her personal belongings before being required to leave the residence.

179. The remainder of Ms. Ritz's personal property remained inside the Premises following her removal.

180. After Ms. Ritz's removal, Defendants RandR, LLC and Ronald Taylor exercised dominion and control over Ms. Ritz's personal property inconsistent with Ms. Ritz's ownership and possessory rights.

24

181. On August 18, 2025, Ms. Ritz's counsel contacted counsel for Defendants RandR, LLC and Ronald Taylor and demanded access for Ms. Ritz to retrieve her belongings.

182. On August 22, 2025, Ms. Ritz's counsel again requested information concerning the location and return of Ms. Ritz's personal property.

183. Defendants RandR, LLC and Ronald Taylor failed and refused, after demand, to return Ms. Ritz's property.

184. Upon information and belief, Ms. Ritz's personal property was disposed of, retained by, destroyed, or otherwise permanently withheld by Defendants.

185. Defendants intentionally exercised dominion and control over Ms. Ritz's personal property in a manner inconsistent with her rights of ownership.

186. Defendants' conduct constitutes conversion under the laws of the State of Tennessee.

187. As a direct and proximate result of Defendants' conduct, Ms. Ritz lost the value of nearly all of her personal possessions and suffered economic damages.

188. Defendants' actions were intentional, willful, and undertaken in conscious disregard of Ms. Ritz's property rights.

189. Ms. Ritz is entitled to compensatory damages equal to the full fair market value of the converted property.

190. Ms. Ritz further seeks punitive damages as permitted under Tennessee law.

## COUNT V

**Violation of the Tennessee Consumer Protection Act (T.C.A. §47-18-101, *et. seq.*)**
(Against RandR, LLC and Ronald Taylor)

191. Ms. Ritz incorporates by reference the preceding paragraphs as though fully set forth herein.

25

192.    The Tennessee Consumer Protection Act prohibits "[r]epresenting that a consumer transaction confers or involves rights, remedies, or obligations that it does not have or involve or which are prohibited by law." T.C.A. § 47-18-104(b)(12).

193.    Ms. Ritz rented real property and so satisfies the definition of a consumer within the meaning of the Tennessee Consumer Protection Act. T.C.A. § 47-18-103(6).

194.    Defendant Taylor, in the course of trade or commerce, represented expressly and by his conduct that he had a legal right to immediately dispossess Ms. Ritz based solely upon a judgment of possession, when in fact Tennessee law requires the issuance and execution of a writ of possession before a tenant may be lawfully removed. His conduct would lead a reasonable consumer to believe the removal was legally authorized and required.

195.    Defendant Taylor further engaged in prohibited and unfair or deceptive acts in violation of the Tennessee Consumer Protection Act by:

    a)  Removing or causing the removal of Ms. Ritz from the Premises without first obtaining and executing a lawful writ of possession;

    b)  Utilizing or involving law enforcement presence to effectuate such removal absent lawful authority; and

    c)  Denying Ms. Ritz a reasonable opportunity to retrieve her personal property, resulting in the loss of her belongings.

196.    These acts constituted representations that the transaction involved rights and remedies Defendant Taylor did not possess and/or conduct that was unfair or deceptive within the meaning of the Act.

197.    Defendant Taylor's conduct was willful or knowing in that he acted with awareness of his conduct and with reckless disregard for Ms. Ritz's rights under Tennessee law.

26

198. As a direct and proximate result of Defendant Taylor's unfair and deceptive acts, Ms. Ritz suffered damages, including but not limited to loss of personal property, loss of housing, and other consequential damages.

199. Pursuant to T.C.A. § 47-18-109, Ms. Ritz is entitled to recover treble damages due to Defendant Taylor's willful or knowing violations, as well as punitive damages, court costs, and attorney's fees.

## COUNT VI

### Trespass
(Against Law Enforcement Deputies, RandR, LLC, and Ronald Taylor)

200. Ms. Ritz incorporates by reference the preceding paragraphs as though fully set forth herein.

201. Trespass protects the right to possession of real property.

202. Defendant Taylor, as the lessor, maintained a limited right to access Ms. Ritz's home, for example to make repairs.

203. Defendant Taylor lacked authority to enter Ms. Ritz's home for purposes of dispossessing her of the property and her personal belongings without the issuance of a writ of possession.

204. Defendant Taylor's entry into the home via Defendant Deputy Cunningham and the Fentress County Sheriff's Office was intentional, malicious, and/or reckless.

205. Defendants Fentress County and Michael Reagon had actual or constructive knowledge that, under Tennessee law, the Sheriff's Office may not lawfully enter an occupant's residence absent a duly issued writ of possession following a detainer judgment, the occupant's consent, or other constitutionally valid legal authority.

27

206.     As a direct and proximate result of the actions of Defendant Taylor, and the policies, customs, and/or deliberate indifference in training and supervision attributable to Defendants Fentress County and Sheriff Reagon, all acting under color of state law, Ms. Ritz suffered damages.

207.     Ms. Ritz is therefore entitled to recover compensatory and punitive damages.

## COUNT VII

### Trespass to Chattels
(Against Law Enforcement Deputies, RandR, LLC, and Ronald Taylor)

208.     Ms. Ritz incorporates by reference the preceding paragraphs as though fully set forth herein.

209.     "A [party] may recover for trespass to chattels upon showing that another party intentionally used or intermeddled with the [party]'s personal property without authorization," and that the "condition, quality, or value" of that property was impaired. *Kauffman v. Forsythe*, 2021 WL 2102910, at *4 (Tenn. Ct. App. May 25, 2021) (alterations and internal quotation marks omitted).

210.     Defendants Leanza, Atchley, John Doe, Justin Cunningham, Hunter Fowler, RandR, and Ronald Taylor intentionally, maliciously, and/or recklessly damaged and destroyed Ms. Ritz's belongings.

211.     As a direct and proximate result of Defendants' actions, Ms. Ritz suffered damages.

212.     Ms. Ritz is therefore entitled to recover compensatory and punitive damages.

28

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff Sherie Ritz respectfully requests that this Court enter judgment in her favor and grant the following relief:

A.      Declare that Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983;

B.      Award Plaintiff compensatory damages, as determined by the trier of fact, in an amount not to exceed $500,000, for loss of housing, loss of personal property, and other economic and non-economic injuries resulting from Defendants' conduct;

C.      Award punitive damages against the individual Defendants as permitted by law;

D.      Award Plaintiff treble damages pursuant to Tenn. Code Ann. §47-18-109, as determined by the trier of fact;

E.      Award Plaintiff reasonable attorney's fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable provisions of law; and

F.      Award Plaintiff her taxable costs of this action pursuant to Fed. R. Civ. P. 54(d);

G.      Award pre-judgment and post-judgment interest as permitted by law;

H.      Enter appropriate injunctive relief requiring Defendants Fentress County and Sheriff Fowler, in their official capacities, to adopt and maintain constitutionally compliant policies, training, and supervision sufficient to prevent the recurrence of the unlawful conduct alleged herein; and

29

I.  Grant such other and further relief as the Court deems just and proper.

Date: July 8. 2026

Respectfully submitted,

   /s/ Christine McMenamin
Christine McMenamin, BPR# 043650
Elizabeth Leiserson, BPR# 036095
Legal Aid Society of Middle Tennessee and the
Cumberlands
9 South Jefferson Avenue, Suite 102
Cookeville, Tennessee 38501
P: 931-771-9194
cmcmenamin@las.org

30